UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JACK V. VENABLE JR.                                    CIVIL ACTION

VERSUS                                                 NO.

SCHLUMBERGER TECHNOLOGY CORPORATION ET AL

**COMPLAINT**

The Complaint of Jack V. Venable respectfully alleges:

**I.   PARTIES**

1. Plaintiff, **Jack Venable Jr.**, is a person of lawful age and a resident of Lafayette, Louisiana. He is a former employee of Schlumberger Technology Corporation and a plan participant of the Schlumberger Group Welfare Benefits Plan.

2. Defendant, **Schlumberger Technology Corporation ("Schlumberger")**, is a foreign Corporation authorized and doing business in Louisiana. Schlumberger is Plaintiff's former employer and the Plan Sponsor referenced herein.

3. Defendant, the **Schlumberger Group Welfare Benefits Plan** (**"The Plan" or "The Disability Plan"**) is an employee benefit plan, created, sponsored, administered, and funded by Schlumberger.

4. Defendant, the **Metropolitan Life Insurance Company ("Metlife")** is a foreign corporation authorized and doing business in Louisiana. Metlife is the named claims administrator of the Plan and designated as an Appeals Fiduciary.

5. Defendant, **Administrative Committee of the Schlumberger Group Welfare Benefits Plan**, ("Administrative Committee") is the plan administrator of the Plan.

1

## II. JURISDICTION & VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this suit involves questions of federal law. The Court has supplemental jurisdiction over the state law claims.

7. Venue is proper in this district under d 29 U.S.C. § 1132(e)(2) because the ERISA Plan resides or may be found in this district, and under 28 U.S.C. § 1391 (b) because a substantial part of the events giving rise to the claim occurred in this district.

## III. FACTS & ALLEGATIONS

8. Plaintiff began working for Schlumberger in 2012 as a DT&R Field Specialist. He was forced to take disability leave on September 23, 2015 due to chronic ankle and back pain, as well as severe PTSD.

9. Plaintiff's medical records, which have been provided to Defendants, demonstrate that he has suffered severe PTSD which was increasing in severity around the time he applied for short term disability ("STD") benefits.

10. Plaintiff's medical records also demonstrate that Plaintiff suffered from debilitating ankle and back pain, which was particularly problematic in light of his job duties, which, for example, required frequent standing and walking, as well as the utmost ability to concentrate as he was in charge of administering sophisticated drilling tools on offshore oil rigs.

11. Plaintiff's medical providers have stated that he is disabled given the severity of his medical condition.

12. Both the Social Security Administration and the Veteran's Administration have found that Plaintiff is disabled under their respective guidelines, awarding disability benefits which are paid on a monthly basis.

13. Plaintiff had never had write-ups or disciplinary counseling while working for Schlumberger.  He had never received any negative verbal criticism. He received positive performance evaluations and did not have any problems with his coworkers.

14. As Plaintiff's medical condition worsened, shortly before applying for disability benefits he contacted Schlumberger's benefits administrator to inquire about certain aspects of the disability plan.

15. He informed his supervisor that he needed to take time off to attend doctor's visits for the period of September 23, 2015 through October 4, 2015.

16. Several days before September 23, 2015, as his condition deteriorated, Plaintiff requested to be removed from the rig he was working on due to his medical condition. It took several days to find a substitute field technician to replace him, and he was eventually flown off the rig on September 23, 2015.  On this same day, upon arriving at Schlumberger's Houma office, he informed his supervisor that he needed to take disability leave. He was given a phone number for Metlife to make the claim. He immediately called Metlife and made his claim for STD benefits on September 23, 2015.

17. Hours after he made a claim for benefits, Schlumberger requested Plaintiff to return to a Schlumberger office. Once he arrived, he was informed that his employment was terminated without explanation.

18. MetLife denied Mr. Venable's claim for STD by letter of September 29, 2015, explaining that he was not eligible for STD benefits because his employment ended on September 23,

2015, which was the date he made his disability claim. MetLife did not cite any plan provisions that would preclude eligibility under the circumstances. Significantly, Plaintiff made his claim for disability benefits before receiving any notice whatsoever that his employer was terminating him.

19. Plaintiff submitted an appeal enclosing medical records demonstrating that he was disabled on the date he applied for disability on September 23, 2015 due to chronic back and ankle pain and severe PTSD, particularly in light of his job duties, which required frequent walking, standing, and the utmost ability to concentrate.

20. MetLife denied the appeal by letter of April 6, 2016 in which it states that although he submitted medical information in support of his appeal, such medical information did not relate back to the date of his disability on September 23, 2015.  MetLife reiterated that he became ineligible for STD benefits because his coverage ended on the date his employment ended. Again, MetLife does not cite any such plan provisions in support of this position.

21. The Plan provides a second level of appeal review which is considered by the Administrative Committee.  Plaintiff has submitted an extensive second appeal providing the medical evidence which Metlife claims to be lacking - i.e. medical evidence relating back to his date of disability on September 23, 2015, including the Social Security Administration's and the VA's finding that Plaintiff was disabled under their respective guidelines at that time.

22. Schlumberger has not yet decided the second appeal but indicated that it would make its decision by October 15, 2016.

23. To the extent that Schlumberger's termination of Plaintiff's employment on the same day but after Plaintiff had applied for disability somehow made Plaintiff ineligible for disability

benefits, which is denied, Plaintiff has lost valuable employee welfare benefits, such as continuing health insurance coverage, life insurance coverage, short and long term disability benefits, and other benefits that he would have continued to receive had his disability claim been approved.

24. In addition to lost disability benefits, Defendants' wrongful termination of Plaintiff's employment resulted in Plaintiff losing his health, vision, dental, life insurance, and wages.

25. Due to Schlumberger's wrongful termination of Plaintiff's employment, Plaintiff was not provided with FMLA leave.

26. Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Notice of Right to Sue on September 22, 2016. Plaintiff timely filed this cause of action within ninety (90) days of receipt of his Notice of Right to Sue.

### COUNT I: Disability Discrimination

27. Plaintiff incorporates by reference and re-alleges all preceding paragraphs.

28. Schlumberger's termination of Plaintiff's employment was motivated by discriminatory animus based on Plaintiff's disability and/or retaliation towards Plaintiff for engaging in a protected activity.

29. Any non-discriminatory reason articulated by Schlumberger for its adverse treatment is actually a pretext for prohibited disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*, and the Louisiana Employment Discrimination Law, La. Rev. Stat. Ann. § 23:301, *et seq*.

30. Schlumberger's disability discrimination has caused Plaintiff emotional distress.

31. Consequently, Schlumberger is liable to Plaintiff for front pay, back pay, lost benefits, mental anguish, attorney fees, costs of these proceedings, and all other relief that may be appropriate under the law.

## COUNT II: Violations of Plaintiff's FMLA Rights

32. Plaintiff incorporates by reference and re-alleges all preceding paragraphs.

33. Schlumberger is an employer within the meaning of the FMLA, 29 U.S.C. § 2611(2)(B)(ii), because it is engaged in commerce or in an industry or activity affecting commerce and employs 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year.

34. Plaintiff is an eligible employee under the FMLA because he was employed by defendant for at least 12 months and for at least 1,250 hours of service during the previous 12-month period.

35. As an eligible employee, Plaintiff was entitled to 12 weeks of FMLA leave because of his disabling medical condition, as well as benefits and pay during this period.

36. Plaintiff provided Schlumberger with all the necessary documentation required in order to approve his FMLA leave. Alternatively, if Schlumberger required additional information, Plaintiff was not provided an opportunity to provide such information because of Schlumberger's wrongful termination of his employment.

37. Alternatively, Schlumberger failed to inform Plaintiff of his rights under the FMLA once put on notice that he had to take disability leave.

38. Schlumberger's termination of Plaintiff's employment was motivated by its desire to preclude Plaintiff's receipt of FMLA leave and therefore constitutes an interference with his protected rights, pursuant to 29 U.S.C. § 2615(a)(1).

39. As a result of Schlumberger's wrongful termination and violation of FMLA rights, Plaintiff suffered emotional distress and monetary damages and is entitled to compensatory damages including, back pay, front pay, the value of lost benefits, liquidated damages, and pre-judgment interest, and all other relief as the facts and law may provide.

## COUNT III: ERISA § 510, 29 U.S.C. § 1140.

40. Plaintiff incorporates by reference and re-alleges all preceding paragraphs.

41. Schlumberger's conduct constituted an unlawful retaliation against Plaintiff for exercising his rights to disability benefits under the Plan.

42. Schlumberger's conduct unlawfully interfered with Plaintiff's rights to retroactive and future benefits under the Plan, as all of Plaintiff's benefits ceased when he was terminated.

43. Schlumberger's decision to terminate Plaintiff was motivated by a desire to avoid significant expenses associated with Plaintiff's continued employment, including but not limited to paying short and long-term disability benefits, benefits while under FMLA leave, continuing health insurance benefits, and all other benefits Plaintiff would be entitled to had Schlumberger approved his STD and LTD claims.

44. Schlumberger's wrongful termination of Plaintiff's employment was done with the intention and effect of discharging, disciplining, and discriminating against Plaintiff for exercising his rights to disability benefits under the Defendant Plan, and for the purpose of interfering with Plaintiff's enjoyment of his rights to disability benefits and other welfare benefits under the Plan.

45. Schlumberger's decision to terminate Plaintiff in order to avoid having to pay continuing employee-welfare-benefit costs caused Plaintiff emotional distress.

46. Plaintiff is entitled to relief under ERISA 502(a)(3), 29 USC Sec. 1132(a)(3), including back pay, front pay, reinstatement of employment, emotional distress damages, and compensatory damages.

## COUNT IV: ERISA § 502(c), 29 U.S.C. § 1132(c)

47. Plaintiff incorporates by reference and herein re-alleges all preceding paragraphs.

48. Defendants, Schlumberger, the Plan, the Administrative Committee, and Metlife, had a duty to furnish certain information to Plaintiff upon request, including "all documents, records, and other information relevant to [Plaintiff's] claim for benefits" within 30 days of receipt of such request. 29 CFR 2560.503-1(j)(3).

49. Defendants, Schlumberger, the Plan, the Administrative Committee, and Metlife, also had a duty to furnish certain plan documents to Plaintiff upon request, including a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. 29 U.S.C.A. §1024(b)(4).

50. Plaintiff wrote to Defendants requesting a copy of the claim file relating to Plaintiff's short and long term disability claims, such as the disability plan, the summary plan description, and all documents that would make up the administrative record in this matter.

51. Upon information and belief, Defendants were plan administrators of the Plan who exercised control of dissemination of plan documents.

52. Defendants failed to provide a copy of the Plan, Plaintiff's claim file, and the summary plan description, within 30 days of Plaintiff's request.

53. Thus, Defendants therefore must pay a penalty of $110/day beginning thirty days after Plaintiff's request for documents.

## COUNT IV: ERISA Wrongful Denial of STD and LTD benefits

54. Plaintiff incorporates by reference and herein re-alleges all preceding paragraphs.

55. Metlife, Schlumberger, the Administrative Committee, and the Plan are liable to Plaintiff for the wrongful denial of his short-term and long-term disability benefits, pursuant to ERISA.

56. Plaintiff is disabled under the terms of the short and long term disability plan and made a claim for disability benefits on September 23, 2015 before receiving notice of his termination.

57. Despite receiving overwhelming proof that Plaintiff qualified for benefits under plan terms, Defendants denied Plaintiff's claim.

58. Metlife, the Plan, and Schlumberger, and the Administrative Committee, failed to provide Plaintiff with written notice of the specific reasons it was denying his claim for disability benefits, in violation of ERISA's notice requirements following a benefit determination. 29 U.S.C. § 1133(1).

59. Nevertheless, Plaintiff submitted an appeal submitting additional medical evidence demonstrating that he was disabled due to ankle and back pain as well as severe PTSD.

60. Despite receiving such evidence, Defendants denied the appeal.

61. Plaintiff submitted a second appeal providing additional medical records demonstrating he has been disabled since taking disability leave on September 23, 2015. This appeal has not

yet been decided, but Defendants have acknowledged that the appeal is under review and a decision will be forthcoming.

62. Plaintiff's second appeal is currently pending before the Administrative Committee.

63. Defendants have administered Plaintiff's disability claim with an inherent conflict of interest as any decision to pay Plaintiff's disability benefits required that Defendants pay Plaintiff's benefits from their own funds.

### COUNT V: Breach of Contract

64. Plaintiff incorporates by reference and herein re-alleges all preceding paragraphs.

65. Alternatively, Plaintiff's claim for either short or long term disability benefits is not governed by ERISA, but by Louisiana law, as Plaintiff's claim for short and long term disability benefits is part of a non-ERISA plan.

66. Upon information and belief, the short-term disability benefits were paid by Schlumberger as a payroll practice and are therefore not controlled by ERISA, pursuant to Department of Labor regulations, 29 C.F.R. 2510.3–1(b)(2).

67. Upon information and belief, disability benefits were paid from the employer's general assets.

68. Disability benefits under Schlumberger's payroll practice are "on account of periods of time during which the employee is physically or mentally unable to perform his or her job duties."

69. Upon information and belief, Plaintiff's long term disability benefits were part of a non-ERISA plan specifically exempt from ERISA.

70. Upon information and belief, Plaintiff paid 100% of the premiums for the long term disability benefits. Her employer did not contribute to the plan. Plaintiff's participation in

the plan was voluntary. The employer's role was limited to collecting premiums and remitting them to the insurer; and her employer received no profit from the plan.

## IV. JURY DEMAND

71. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff, Jack V. Venable Jr., prays for judgment against each Defendant as follows:

1. For all disability benefits due Plaintiff in the past and future under terms of the short and long term disability plans, plus pre- and post-judgment interest;
2. for damages including lost wages, employment benefits, any other compensation lost as result of Plaintiff being wrongfully terminated, as well as compensatory damages;
3. for equitable relief;
4. For damages for emotional distress;
5. For all reasonable attorney fees;
6. For trial by jury
7. for costs of suit; and
8. for all other relief as the facts and law may provide.

Respectfully submitted,

/s/ Reagan L. Toledano_____
James F. Willeford (Bar No. 13485)
Reagan L. Toledano (Bar No. 29687)
Willeford & Toledano

              201 St. Charles Avenue, Suite 4208
              New Orleans, Louisiana  70170
              Phone:  (504) 582-1286; Fax (313) 692-5927
              Email:  rtoledano@willefordlaw.com